FILED

JUN 2 7 2006

NANCY MAYER WHITTINGTON, CLERK
U.S. DISTRICT COURT

1
2
3
4
5
6

7       UNITED STATES DISTRICT COURT

8       FOR THE DISTRICT OF COLUMBIA

9

| | |
|---|---|
| 10  SRI KRISHNA JEWELERS, INC. | Civil Action No.: |
| 11  a Michigan corporation, 31256 Ford Road, Garden City, MI 48135, | COMPLAINT |
| 12  | |
| 13  Plaintiffs, | |
| 14  vs. | CASE NUMBER  1:06CV01176 |
| 15  UNITED STATES CITIZENSHIP AND IMMIGRATION SERVICES, an agency | JUDGE: Emmet G. Sullivan |
| 16  of the United States government, | DECK TYPE: Administrative Agency Review |
| 17  | DATE STAMP: 06/27/2006 |
| 18  Defendant | |

19

20              COMPLAINT

21            I. INTRODUCTION

22
23  1. This is an action brought pursuant to section 10b of the Administrative

24     Procedures Act, 5 U.S.C. § 702, *et seq.,* seeking review of a decision of the

25     Nebraska Service Center ("NSC") Director of the United States Citizenship

       and Immigration Services dated July 2, 2005, File No. LIN 0424452577,

COMPLAINT - 1

denying the Sri Krishna Jewelers, Inc.'s petition to classify Romy George as an intra-company transferee specialized knowledge worker under section 101(a)(15)(L) of the Immigration and Nationality Act, 8 U.S.C. § 1101(a)(15)(L).

## II. PLAINTIFF

2. The plaintiff, Sri Krishna Jewelers, Inc., is a Michigan corporation, residing in the State of Michigan.

## III. DEFENDANT

3. The defendant, United States Citizenship and Immigration Services (hereinafter CIS), is an agency of the United States government residing in the District of Columbia.

## IV. JURISDICTION

4.    This being a civil action against the United States arising under the Immigration and Nationality Act, 8 U.S.C. § 1101, *et. seq.*, and the Administrative Procedures Act, 5 U.S.C. § 701, *et seq.*, both laws of the United States, original jurisdiction over this matter is vested in this Court by 28 U.S.C. § 1331, as well as 28 U.S.C. § 1346(a)(2).

## V. VENUE

5.    Pursuant to 28 U.S.C. § 1391(e), venue is proper in the District of Columbia, the residence of the defendant.

## VI. EXHAUSTION OF REMEDIES

6.    Although 8 C.F.R. § 214.2(l)(10)(i) provides that denial of a petition for classification under section 101(a)(15)(L) of the Immigration and Nationality

COMPLAINT - 2

Act may be appealed to the Administrative Appeals Office under 8 C.F.R. part 103, neither this Act nor the governing regulations provide that such an appeal is a prerequisite of judicial review, nor that it stays enforcement of the denial of the petition.

7. Accordingly, taking such an appeal is not a prerequisite to plaintiff Sri Krishna Jewelers, Inc., filing an action for review under section 10b of the Administrative Procedures Act. *Darby v. Cisneros*, 113 S.Ct. 2539, 2542-45, 125 L. Ed. 2d 113, 61 U.S.L.W. 4679 (1993); *See also, Karen Yuen Fong Young v. Reno*, 114 F. 3d 879 (CA9 1997).

## VII. FACTUAL ALLEGATIONS

8. The plaintiff, Sri Krishna Jewelers, Inc. has been continuously engaged primarily in the marketing of handcrafted Indian style jewelry since 1991.

9. All 100 outstanding shares of Sri Krishna Jewelers, Inc.'s common shares have been issued to Sri Krishna Jewelers, an Indian co-partnership. There are no other outstanding shares.

10. On August 31, 2004 plaintiff Sri Krishna Jewelers, Inc. (SKJI) filed a petition for nonimmigrant (form I-129) with the CIS to classify Romy George as an intracompany transferee specialized knowledge ("L-1B") worker under 8 U.S.C. § 1101(a)(15)(L)(i)(B).

11. This petition was supported by evidence that Romy George had been continuously employed by SKJI's parent company, Sri Krishna Jewelers (SKJ) since April 2001 as a Sales Executive in a position which involved

COMPLAINT - 3

Michael E. Piston, P.C.
4000 Livernois, Suite 110
Troy, MI 48098
(248) 524-1936
michael@piston.net

specialized knowledge, and that he was being offered a job to be employed by SKJI in a specialized knowledge capacity.

12.    Romy George's employment at Sri Krishna Jewelers involved specialized knowledge because as a result of that employment he possesses specialized and advanced knowledge that is different from that generally found in the U.S. jewelry industry. Memorandum to all Service Center Directors from Fujie O. Ohata, (then) Associate Commissioner, Service Center Operation, Immigration Service Division, December 20, 2002, Regarding Interpretation of Specialized Knowledge.

13.    In particular, Mr. George has through his training and experience gained a very detailed knowledge of SKJ's Indian-style jewelry, which is different from that generally found in the U.S. jewelry industry, so much so that even the most experienced American jewelry salesman would not even be able to identify basic Indian-style jewelry products, much less be aware of the subtle regional variations in them from state to state that is critical to their successful marketing.

14. Further, Sri Krishna Jewelers products are quite different not only from the jewelry available  in the United States but in many instances even in India itself.

15.    In addition, Mr. George has advanced knowledge of the role which jewelry plays in Indian culture and ritual, and uncommon familiarity with the number of different sub-cultures in several Indian geographical and sociological groups, and unique skills in identifying and otherwise

COMPLAINT - 4

accounting for a number of factors in the sale and marketing of Sri Krishna

Jewelers, Inc.'s products, all of which is knowledge almost entirely

unavailable and indeed unknown in the U.S. jewelry industry.

16. For example, an American jewelry salesperson would not be able to help an

Indian origin customer find many of the pieces that she is looking for

because the names of the distinctive Indian pieces are complicated for many

Americans and would require them to be trained extensively and at great

expense to recognize certain designs.  An American jewelry salesperson

would not know what "mancal sutras" are (a chain worn by the bride in

Indian weddings), nor a "pustas" (the locket worn on the mancal sutra),

"Phades" (another kind of chain), "kum-kum boxes" (a powder box given to a

woman at the time of engagement), a "manitadigolusu" (a kind of waist

chain), or a "mala" (a type of necklace) to name only a few of the technical

terms used in Indian style jewelry which have no English equivalents

because the products they refer to simply do not exist in western style

jewelry.

17.     Nor would an American or even an Indian jewelry salesperson clerk have

training in the design and manufacture of jewelry that Mr. George has had

in Sri Krishna's headquarters. Mr. George spent 4 months observing the

design and an additional 4 months observing the manufacturing

departments of SKJI in which custom jewelry was made by hand and

thereafter used that knowledge in his job to effectively advise customers in

jewelry purchases, as well as to set prices and estimate delivery times.

COMPLAINT - 5

18.     What makes SKJ virtually unique, even among Indian jewelry companies, is that it is a fully integrated company – that is to say, Sri Krishna Jewelers designs, fabricates and sells its own jewelry. Almost no other Indian jewelry company does business this way. Almost all Indian retailers buy their jewelry from wholesalers, who in turn purchase from the manufacturers who make the jewelry – and even those manufacturers often buy their designs from independent third parties. By designing, manufacturing and selling its own jewelry, SKJ gains a powerful tool which is the key to its success in the highly competitive Indian jewelry market – the ability to create custom made pieces to meet their customer's precise specifications.

19.     Through his training and experience as acting as SKJ's sales representative, Mr. George has gained invaluable experience in sale of custom design and manufactured jewelry, and the knowledge of SKJ's processes, which is virtually unique throughout the world.

20.     This enables Mr. George, for example, to be able to obtain from a customer all of the information which SKJ needs to design and fabricate custom made jewelry based upon a customer's verbal description or simple sketch, to understand the labor and material which goes into it well enough to assess whether the assess whether creation of the proposed piece is even feasible, quote the customer a price, and to accurately estimate manufacturing time, then to describe the proposed piece to SKJ's design department in sufficient detail to enable SKJ to design and manufacture a jewelry piece which will fully meet the customer's exacting specifications.

COMPLAINT - 6

21.     Finally, in his work at SKJI, Mr. George received training regarding SKJI proprietary products that are unique to the company and not sold anywhere else in the world. No U.S. or even Indian trained sales person would even know what these products were, much less be able to describe the painstaking care that goes into their design and production.  Mr. George's perspective as one exposed to the design, manufacture and sales of unique Sri Krishna products empowers him to explain to the customer all the thought, care and effort that goes into the design and fabrication of these unique, one-of-a-kind pieces. It is this specialized knowledge which allows Mr. George to "tell the story behind the piece," whereas a person not exposed to these processes could merely show it to the customer, and agree with her that it looked "very nice."

22.     As Ms. Ohata stated in her memorandum of December 20, 2002, "a common type of specialized knowledge is knowledge of a process or a product which would be difficult to impart to another individual without significant economic inconvenience to the United States or foreign firm."

23.     It would be not only difficult, but impossible for the petitioner to impart the knowledge needed to perform this position, because there is no one in the U.S. office to impart it.  The knowledge which Mr. George gained was over a one-year training program in Sri Krishna's main office in Andhra Pradesh, India, where he worked directly with designers and fabricators, none of whom work in the U.S. , and thereafter through experience at SKJI retail facility in India.

COMPLAINT - 7

Michael E. Piston, P.C.
4000 Livernois, Suite 110
Troy, MI  48098
(248) 524-1936
michael@piston.net

24.    The only way to impart the specialized knowledge possessed by Mr.
George would be to send another individual to India for at least a year so he
can observe the sales, inventory control, design and manufacturing process
himself.

25.    All of the specialized and advanced knowledge described above would
also be used by Mr. George in his proffered employment as a Sales
Executive for SKJI.

26.    All of the above claims were extensively documented in an extremely
detailed affidavit from Pradeep Kumar, the President of SKJI, supported by
numerous concrete examples of how Mr. George used specialized knowledge
in his work, and well as extensive documentation of the unique products
manufactured and designed by SKJ in India, and sold by SKJI in the U.S.

27.    Further, the corporate relationship between SKJ and SKJI was
supported by a Certificate by Mr. Kumar in his role as SKJI's Corporate
Secretary, as well as a copy of the sole stock certificate issued by SKJI.

28.    Nevertheless, on July 2, 2005 the CIS denied SKJI's petition to classify
Romy George as a specialty occupation worker on two grounds on the
ground that it had failed to establish that he possessed specialized
knowledge, and that there was a qualifying corporate relationship between
SKJI and SKJ.

29.    Inasmuch as the evidence contained in the record unequivocally
demonstrates that Romy George had over 1 year of experience with SKJ in
India in a position which involved specialized knowledge, and will be

COMPLAINT - 8

Michael E. Piston, P.C.
4000 Livernois, Suite 110
Troy, MI  48098
(248) 524-1936
michael@piston.net

employed in a specialized knowledge capacity with SKJI in the U.S., and that SKJI is SKJ's wholly owned subsidiary, the CIS's decision of July 2, 2005 was arbitrary, capricious, unsupported by substantial evidence in the record and/or otherwise not in accordance with law.

RELIEF REQUESTED

Accordingly, it is respectfully requested that this Court hold unlawful and set aside the CIS's decision of July 2, 2005, No. LIN 0424452577, denying SKJI's petition for nonimmigrant worker upon behalf of Romy George, order the petition approved, and grant Plaintiff its reasonable attorney fees and other relief as may be appropriate.

Dated this 20th day of June, 2006

Michael E. Piston
Michael E. Piston, P.C.

4000 Livernois Ste 110
Troy, MI 48098
Phone: 248-524-1936
Fax: 248-928-0340
e-mail: michael@piston.net

COMPLAINT - 9

Michael E. Piston, P.C.
4000 Livernois, Suite 110
Troy, MI 48098
(248) 524-1936
michael@piston.net